EL PUEBLO DE PUERTO RICO, demandante y apelado, *v.* RAMÓN VICENTE VÁZQUEZ, acusado y apelante.

Núm. 10229.—*Sometido:* Enero 20, 1944. *Resuelto:* Mayo 1, 1944.

*Justo A. Casablanca,* abogado del apelante; *R. A. Gómez, Fiscal del Tribunal Supremo* y *Luis Negrón Fernández, Fiscal Auxiliar,* abogados de El Pueblo, apelado.

EL JUEZ ASOCIADO SEÑOR TODD, JR., emitió la opinión del tribunal.

El apelante fué sentenciado a seis meses de cárcel por un delito de hurto menor. No existe prueba directa tendente a demostrar que él cometiera el delito; pero los efectos robados fueron en parte vendidos por él a otra persona y el resto de ellos fué ocupado en su posesión. La cuestión a determinar en el presente recurso es si los hechos del caso y la explicación que ofrece el acusado sobre la forma en que

dichos efectos vinieron a su poder justifican la revocación de la sentencia. *Pueblo* v. *Laureano,* 20 D.P.R. 7.

Allá para el 17 de julio de 1942 Angel Díaz García era dueño de un automóvil que además de sus cuatro gomas tenía dos de repuesto, todas nuevas. Como a las nueve de la noche de ese día, lo prestó a José Luis López con encargo de devolverlo enseguida. Como a las doce de la noche del mismo día vino López a avisarle que le habían hurtado el automóvil de un sitio en la carretera de Río Piedras a Caguas, donde lo tenía estacionado. Hicieron gestiones para recuperarlo y lo encontraron el 26 de julio de 1942 en una cuneta de la carretera que conduce de La Muda de Caguas a Aguas Buenas, como a un kilómetro de esta población. El vehículo no había sufrido ningún desperfecto, pero le faltaban entre otras cosas las dos gomas de repuesto y dos de las que estaban en uso. Como resultado de la investigación practicada por la detective, dos de las gomas aparecieron usándose en el automóvil de Santiago Díaz. Interrogado este último, manifestó que las había comprado a Ramón Vicente Vázquez; que éste le pidió por ellas $100 y se las dejó en $90. Investigado Vázquez, admitió que las había vendido a Santiago Díaz, y al preguntársele cómo las había adquirido él, dijo que las había comprado, juntamente con otras dos que aparecieron en el automóvil del propio Vázquez.

Según el detective Saturnino Romero, Vázquez en ningún momento dijo quién se las había vendido, a pesar de habérselo preguntado insistentemente. De dichas cuatro gomas, Angel Díaz García identificó tres como de su propiedad.

La defensa presentó como testigo a Víctor Vélez Rosado, quien declaró que conocía a Ramón Vicente Vázquez hacía algún tiempo; que Vázquez le había dicho que si sabía de alguien que vendiese algunas gomas le avisase; que para esa fecha William Carrión le había informado que él tenía unas gomas para vender; que fué con William Carrión donde Vázquez; que aquél se las ofreció y éste le compró dos por

$75; que desde esa fecha no ha vuelto a ver a Carrión ni conoce su paradero.

Fernando Pérez, amigo de Vázquez, declaró que un domingo fué a buscar a Vázquez para dar un paseo, y hallándose en la casa de éste presenció cuando llegaron dos individuos y le ofrecieron en venta unas gomas; que dichos individuos llegaron en un automóvil, y que el que lo guiaba era William Carrión, a quien no conoce personalmente; que al que acompañaba a Carrión le llamaban Vitín y se hallaba en la corte el día en que se celebraba el juicio en la corte inferior; que las gomas fueron compradas por $75.

El acusado declaró además que trabajaba en Tesorería Federal hacía dos años; que ganaba $135 mensuales; que vivía con su padre, que es un comerciante en Río Piedras, y que la casa donde vivía era propiedad de su padre; que los $135 que ganaba le sobraban casi en su totalidad debido a que vivía con su padre y no tenía que pagar renta alguna; que jamás había sido acusado ni convicto de delito alguno; que es soltero y no tiene hijos; que el domingo 19 de julio de 1942, frente a su casa, compró las cuatro gomas a Víctor Vélez Rosado y a William Carrión por la cantidad de $75, que entregó a William Carrión (T. de E., pág. 39); que dos de las gomas fueron ocupadas en su poder y las otras dos las había vendido a Santiago Díaz el 22 de julio de 1942. Más adelante, a preguntas del juez inferior, contestó que al ser interrogado por la detective acerca de cómo había adquirido las gomas les dijo que las había comprado a un tal Vitín (T. de E., pág. 42); que no mencionó entonces a Carrión porque el que vino a hacer la transacción fué Vitín; que a Vitín lo arrestaron el mismo día que a él; que ha tratado de conseguir a Carrión porque el asunto es muy delicado para él por la posición que ocupa, pero no lo ha conseguido; que luego le informó a la detective sobre Carrión.

Somos de opinión que la prueba en este caso no es suficiente para establecer la culpabilidad del acusado. Al igual

que en *Pueblo* v. *Atilano,* 44 D.P.R. 591, en el cual revocamos la sentencia condenatoria, puede decirse que ''La explicación que éste (el acusado) dió pudo ser sin duda alguna más concreta, debiendo haber demostrado por lo menos que hizo esfuerzos para encontrar al vendedor, *pero no es increíble y pudo ser cierta.''* (Bastardillas y paréntesis nuestros). La declaración del acusado en el caso de autos es aun más fuerte que la del acusado en el caso de *Pueblo* v. *Atilano,* supra, pues tendió a demostrar los esfuerzos que hizo por localizar al que le vendió las gomas, y además presentó dos testigos presenciales que declararon en cuanto a la transacción de la venta. Ninguna de esta prueba fué contradicha por El Pueblo.

Las discrepancias o contradicciones que se notan en la declaración del acusado tienen su explicación en el hecho de que el caso envuelve la compra de unas gomas en lo que en estos tiempos se conoce con el nombre de ''Mercado Negro'', hecho prohibido y penado. Empero, aun cuando él no estaba acusado de ese delito, siendo un empleado federal tenía que darse cuenta de las posibles consecuencias que su actuación podían acarrearle. No es irrazonable considerar dichas contradicciones como una consecuencia lógica de dichas circunstancias.

Sostuvimos, además, en el caso de *Pueblo* v. *Atilano,* supra, que por fuerte que sea la sospecha que contra el acusado se tenga, no es suficiente para declararlo culpable y aplicamos la regla establecida en el de *El Pueblo* v. *Domínguez,* 36 D.P.R. 463, al efecto de que: ''Cuando en proceso por hurto la prueba sólo demuestra la posesión por parte del acusado del objeto hurtado sin ninguna otra circunstancia que le conecte con el hecho de la sustracción, ella es insuficiente.''

Esta regla es aplicable al caso de autos y *la sentencia debe ser revocada absolviéndose al acusado.*

OPINIÓN DISIDENTE DEL JUEZ ASOCIADO SEÑOR SNYDER

Disiento. Abrigo dudas en cuanto a haber llegado al mismo resultado a que llegó la corte de distrito, de haber sido yo el juez ante quien se practicó la prueba. Pero no oí ni vi a los testigos, y del récord escueto no tengo medios de averiguar qué testigos eran dignos de crédito. Aun si tuviéramos poder para así hacerlo, estaría por tanto renuente a sustituir mi apreciación de la prueba por aquélla de la corte de distrito.

En este caso no debemos examinar de nuevo los hechos para determinar si hubiéramos llegado al mismo resultado en primera instancia. La misión de esta corte, al revisar cuestiones de hecho, termina cuando encuentra que existe base racional en la sentencia de la corte inferior. No puedo convenir en que la sentencia de la corte de distrito era enteramente irracional, y que no existía prueba sobre la cual basar la sentencia condenatoria. Esa es mi única razón por la cual voté para que se confirmara la sentencia condenatoria.